IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MICHAEL PERRY MUHAMMAD**  **PLAINTIFF**
ADC #96905

V.                                NO. 4:21-cv-00491-BRW-ERE

**LONNELL SEAMSTER,** *et al.*                         **DEFENDANTS**

**ORDER**

Pending is Plaintiff's Motion for Preliminary Injunction (Doc. No. 13). For the reasons set out below, the motion is DENIED.

**I.    BACKGROUND**

Plaintiff Michael Perry Muhammad, an inmate currently incarcerated at the Maximum Security Unit ("MSU") of the Arkansas Division of Correction ("ADC"), filed this lawsuit *pro se* under 42 U.S.C. § 1983.[1]   Mr. Muhammad claims that, during his confinement at the MSU, Defendants Lonnell Seamster, Steven Cook, Tabitha Peacock, Patti Anne Conley, Jasmine Siah, Shana Whitmore, and Holly Dunavin provided him inadequate medical care of his right leg which resulted in gangrene in his leg. *Docs. 1, 7, 12*.

On August 4, 2021, Mr. Muhammad filed a motion for a preliminary injunction and a temporary restraining order alleging that Defendants are refusing to timely send him to an outside provider for follow-up care for his leg.[2] *Doc. 13*.

---

[1] Mr. Muhammad initially filed this lawsuit in the Western District of Arkansas because many claims arose at the Ouachita Correctional River Unit. *Doc. 1*. The claims that arose at the MSU were severed, and a lawsuit was opened in the Eastern District of Arkansas to address the deliberate-indifference claims that arose at the MSU. *Doc. 3*.

[2] On August 9, 2021, Mr. Muhammad filed a second motion for injunctive relief. *Doc. 16*. The Court entered a recommendation denying the motion, without waiting on a response, because the relief sought was unrelated to the claims Mr. Muhammad is proceeding with here. *Doc. 17*.

Defendants Siah, Seamster, Peacock, Cook, and Dunavin ("Medical Defendants") have responded that Mr. Muhammad has not shown that he faces immediate danger of irreparable harm absent Court intervention.[3] *Doc. 23*.

## II. DISCUSSION

A preliminary injunction "is an extraordinary remedy," and the movant bears the burden of showing that such relief should be granted.[4] *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (internal citations omitted).

> [I]n the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration . . . [t]he courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate.

*Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr,* 676 F.2d 1211, 1214 (8th Cir. 1982)).

In considering whether to grant injunctive relief, the Court must consider the following factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that movant will succeed on the merits; and (4) the public interest. *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). No single factor is dispositive. *Id.* at 113. However, absent a showing of real or immediate threat, there can be no showing of

---

[3] The Court has ordered service, but service has not yet been executed on Defendants Patti Anne Conley or Shana Whitmore. *Docs. 7, 22*.

[4] "In the Eighth Circuit, the same standards are applied to a request for a preliminary injunction as to a request for a temporary restraining order." *Frazier v. Kelley*, 460 F.Supp. 3d 799, 828 (E.D. Ark. 2020) (citing *S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989)).

irreparable injury. *Randolph v. Rogers*, 170 F.3d 850, 856 (8th Cir. 1999) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Here, Medical Defendants have produced Mr. Muhammad's relevant medical records in response to his motion. *Doc. 23-1*.

On April 1, 2021, an outside provider and orthopedic surgeon, Dr. Michael Hubbard (not a named Defendant), examined Mr. Muhammad for follow-up care of his right leg after surgery.[5] *Id. at 1*. Mr. Muhammad reported he had pain, swelling, and drainage in his leg. *Id. at 2*. Dr. Hubbard found the wound was clean and that there was no drainage or warmth. *Id. at 3*. However, Dr. Hubbard noted there was some swelling and tenderness in Mr. Muhammad's leg. *Id. at 3*. Dr. Hubbard recommended that Mr. Muhammad's leg continue to be monitored, and that Mr. Muhammad have a follow-up appointment in three weeks. *Id. at 1, 3*. Nurse Jones (not a named Defendant) noted that "Dr. Hubbard—does not recommend any further surgical intervention at this time." *Id. at 1*.

On April 6, 2021, Dr. William Kent (not a named Defendant) examined Mr. Muhammad's leg for a follow-up appointment at the MSU. *Id. at 5*. Dr. Kent noted that the leg was "healing well." *Id. at 5-6*.

On May 3, 2021, Defendant Seamster examined Mr. Muhammad because Mr. Muhammad reported pain in his right leg and had concerns that his leg was infected. *Id. at 8*. Defendant Seamster cleaned the wound and applied antibiotic ointment, noting that the site should continue to be monitored for infection. *Id. at 9*.

---

[5] On February 5, 2021, Dr. Hubbard operated on Mr. Muhammad's leg because his right tibia was infected. *Doc. 13 at 8*.

On May 26, 2021, Defendant Seamster examined Mr. Muhammad because Mr. Muhammad believed his leg was infected. *Id. at 11*. Defendant Seamster noted that Mr. Muhammad had a history of self-harm and that the wound appeared to have been tampered with. *Id*. Defendant Seamster cleaned the wound and wrapped it with a bandage. *Id. at 12*. Defendant Seamster recommended daily dressing changes and that staff document the size of the wound since it was possible that Mr. Muhammad was tampering with it. *Id.*

On June 10, 2021, Dr. William examined Mr. Muhammad at the MSU and noted that the right leg has some swelling, but that there was less drainage than before. *Id. at 14*. Dr. William recommended that Mr. Muhammad see an infectious disease specialist "in our own group." *Id.*

On July 19, 2021, Dr. James Smith (not a named Defendant) examined Mr. Muhammad at the MSU. *Id. at 17*. Dr. Smith found no drainage or signs of infection, but noted that there was swelling, and a portion of the skin had "split open." *Id*.

On July 21, 2021, Dr. Smith submitted an outside consolation request so that Mr. Muhammad could see a surgeon because Mr. Muhammad's wound had "reacculumation." *Id. at 19-24*. Dr. Smith noted that the outside appointment was non-emergent. *Id. at 24*. An appointment with Dr. Hubbard was scheduled for October 2021.[6] *Id. at 25*.

Mr. Muhammad's allegation that Defendants are refusing to send him to an outside provider for follow-up care for his leg is controverted by his medical records. Mr. Muhammad is schedule to see an outside provider, Dr. Hubbard, for follow-up care in October of 2021. Mr. Muhammad may prefer to see Dr. Hubbard sooner, but his leg is being regularly monitored by

---

[6] Medical Defendants explain that for security reasons, the exact date, time, and location of the appointment have been redacted from the record. *Doc. 23*.

doctors and nurses at the MSU and they do not find any emergent medical needs at this time. Mr. Muhammad may disagree with this assessment, but he has not been able to show that he faces any irreparable injury that requires Court intervention. Accordingly, Mr. Muhammad's motion must be denied.

## CONCLUSION

For the reasons set out above, Mr. Muhammad's motion for injunctive relief (Doc. No. 13) is DENIED.

IT IS SO ORDERED, this 10th day of September, 2021.

Billy Roy Wilson
UNITED STATES DISTRICT JUDGE